615 A.2d 113

COMMONWEALTH of Pennsylvania, DEPARTMENT
OF TRANSPORTATION, BUREAU OF DRIVER
LICENSING, Appellant,

v.

William F. HOLSTEN, II, Appellee.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 24, 1992.

Decided May 5, 1992.

Publication Ordered Sept. 15, 1992.

Marc A. Werlinsky, for appellant.

Francis R. Lord, for appellee.

Before COLINS and KELLEY, JJ., and BARBIERI, Senior Judge.

COLINS, Judge.

Before the Court is an appeal of the Department of Transportation, Bureau of Driver Licensing (Department) from an order of the Court of Common Pleas of Delaware County that sustained the appeal of William F. Holsten, II (Holsten), from the one-year suspension of his operating privilege for refusing to submit to a chemical alcohol test in violation of Section 1547(b) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b). We reverse.

On July 21, 1990, Officer Daniel Wallower, a patrolman with the Haverford Township Police Department, was called to the scene of a two-car accident in which Holsten's vehicle, while traveling north in the southbound lane of Darby Road, collided head-on with a southbound pick-up truck. Holsten, whom we note is an attorney, was taken to Haverford Community Hospital by ambulance. Officer Wallower testified that when he spoke with Holsten at the hospital, Holsten stated that he did not remember what took place in the accident. Holsten admitted that he had attended a golf tournament stag night at

which he had consumed straight vodka drinks but stated that he did not know how many drinks he had consumed. According to Officer Wallower, Holsten was bleeding from his forehead area, was combative and had a strong odor of alcohol on his breath.

After placing Holsten under arrest, Officer Wallower requested that he submit to a chemical test. Holsten refused. Officer Wallower then advised Holsten that if he refused the test, his driver's license would be suspended for a period of one year. Holsten again refused to submit to a test. According to Officer Wallower, he twice advised Holsten of the implied consent warning. On cross examination, Officer Wallower testified:

Q. Was there some reason after the first refusal that you asked the second time?

A. To make sure he understood what I was saying.

Q. Did you have some doubt about that?

A. No, sir.

Q. You had no doubt at all?

A. No, sir.

By official notice dated and mailed August 14, 1990, the Department notified Holsten that his operating privilege was to be suspended for a period of one year, effective September 18, 1990, for his refusal to submit to chemical blood alcohol testing. Holsten appealed this suspension to the trial court on September 13, 1990.

A hearing de novo was held before the trial court on April 8, 1991. The Department presented the testimony of Officer Wallower. Holsten testified and presented the testimony of Patricia Kreb, who stated that she was an attorney employed by his firm, (Kreb) and Dr. Thomas F. Powell (Dr. Powell). By order dated June 3, 1991, and opinion dated August 15, 1991, the trial court sustained Holsten's appeal, concluding that, because his injuries were of a significant nature, his refusal was not knowing and conscious.

■ In its appeal, the Department argues that the trial court's finding that Holsten's refusal was not knowing and

conscious was not supported by competent evidence of record and constituted an abuse of discretion. Our review of this matter is limited to determining whether the trial court's findings are supported by substantial, competent evidence, whether there has been an erroneous conclusion of law or whether the trial court's decision demonstrates a manifest abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Cochrane*, 114 Pa.Commonwealth Ct. 185, 538 A.2d 614 (1988), *appeal dismissed as improvidently granted*, 523 Pa. 104, 565 A.2d 159 (1989).

In order to sustain a license suspension under Section 1547(b) of the Code, the Department must prove that the driver: (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in a license suspension. *Department of Transportation, Bureau of Driver Licensing v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). Once the Department establishes these four elements, the burden of proof then shifts to the driver to prove by competent evidence that he or she was unable to make a knowing and conscious refusal to consent to the chemical test. *O'Connell*. The trial court found and it is not contested that the Department met its burden of proof. Therefore, we must determine whether Holsten satisfied his burden of proving that he was incapable of making a knowing and conscious refusal.[1]

---

1. There is no evidence of record that *Miranda* warnings were ever administered or that Holsten exhibited any confusion regarding his rights under the law. Furthermore, Holsten never disputed the sufficiency of the warnings administered by Officer Wallower. Therefore, we believe this opinion does not conflict with our recent decisions in *Department of Transportation, Bureau of Driver Licensing v. Hoover*, 147 Pa.Commonwealth Ct. 70, 606 A.2d 1264 (1992) and *Department of Transportation, Bureau of Driver Licensing v. Sorg*, 147 Pa.Commonwealth Ct. 82, 606 A.2d 1270 (1992), both of which address the sufficiency of the warnings given pursuant to the Supreme Court's holding in *O'Connell*. We believe that our resolution of the issue raised in the instant matter is proper and in accord with the Supreme Court's decision in *Commonwealth v. McFadden*, 522 Pa. 100, 559 A.2d 924 (1989) to apply therein its rules set forth in *O'Connell* "since Appellant ha[d] preserved this issue on appeal." *McFadden*, 522 Pa. at 103, 559 A.2d at 925.

Where, as here, injuries are not obviously incapacitating, a licensee must present competent medical testimony that a knowing and conscious refusal could not be made. *Department of Transportation, Bureau of Driver Licensing v. Derhammer*, 118 Pa.Commonwealth Ct. 364, 544 A.2d 1132 (1988). Hence, "[m]edical evidence is not a *per se* requirement; however, absent competent medical testimony, 'bare assertions' of physical incapacity are insufficient." *Department of Transportation, Bureau of Driver Licensing v. Groscost*, 142 Pa.Commonwealth Ct. 36, 41, 596 A.2d 1217, 1220 (1991).

We addressed this question in *Department of Transportation, Bureau of Traffic Safety v. Day*, 93 Pa.Commonwealth Ct. 49, 500 A.2d 214 (1985), wherein we stated:

> Many factors must be considered in determining whether the refusal of a driver to submit to a blood test or the breathalyzer was a knowing and conscious refusal. One of the most important is the driver's mental and physical state at the time. The nature and extent of the driver's injuries are relevant on this issue.

*Id.* at 51, 500 A.2d at 214. In *Day*, unlike here, no medical evidence was presented to show that the driver's injuries rendered him incapable of making a knowing and conscious refusal. However, the record showed that the driver "suffered multiple injuries, including: a broken jaw, severe facial lacerations, a broken arm, an injured leg, and blows to the back of his head," which resulted in his exhibiting "rambling speech, confusion, and at times, a total loss of memory." *Id.* at 52, 500 A.2d at 215. We held that this evidence was sufficient to support the trial court's finding that the driver's refusal was not conscious and knowing.

The trial court correctly noted that Holsten's self-serving statements regarding his physical condition, without more, were not sufficient to satisfy his burden of proof. However, the trial court concluded that Holsten's testimony along with that of Kreb and Dr. Powell was sufficient and that Holsten's injuries were not unlike those in *Day*. We believe the trial court has misinterpreted this Court's decision in *Day*. The

fact that injuries are significant in and of itself does not per se warrant a conclusion that a refusal was not knowing and conscious. Either the injuries must evidence an *obvious* inability to comply with the test, or there must be competent medical evidence presented to prove a nexus between the injuries sustained and the refusal to take the test.

The hospital records entered into evidence state that Holsten sustained multiple superficial facial lacerations, a deep laceration on his right eyelid, a burn on his right hand, and that a possible fracture involving the right orbital floor extending into the superior portion of the right maxillary sinus, a right blowout fracture, could not be fully excluded.

However, the emergency service report, dated July 21, 1990 at 1:45 A.M., indicates that Holsten's vital signs were normal and that he was "beligerous [sic] at times stating he will do everything himself." The report also indicates the highest response rating possible for Holsten's eyes, motor responses and verbal responses pursuant to the Glascow Coma Scale.[2] The hospital emergency room report notes that Holsten was alert, belligerent and that he followed commands. It further states: "Refuses DUI testing—informed of his rights by Officer Wallower." The only contrary notation appears in the emergency room report at 6:15 A.M., well after the relevant time period, and indicates that Holsten was "slightly dizzy and sweaty—feels faint." Therefore, there is no evidence in the record, other than Holsten's bare allegations, that he exhibited any symptoms such as those present in *Day*, which would support a conclusion that he was obviously incapable of complying with Officer Wallower's request.

We note here that the trial court erroneously relied on Kreb's testimony as corroborative of Holsten's assertions regarding his injuries. Officer Wallower testified that he questioned Holsten between 12:53 A.M. and 1:30 A.M., that Holsten was conscious the entire time and was responsive to his questions. Kreb testified that she did not arrive at the hospital until approximately 2:30 A.M. to 2:45 A.M. Not only

---

2. Dr. Powell testified that the Glascow Coma Scale is a standardized process used to assess a person's overall mental status.

was Kreb not present during the relevant period in which Officer Wallower's questioning took place but also, this Court has held that "when a motorist has not suffered obvious incapacitating injuries, lay testimony may not supplant medical opinion in order to corroborate a witness's assertion of injury." *Cochrane*, 114 Pa.Commonwealth Ct. at 190, 538 A.2d at 616.

As to the medical evidence presented, Dr. Powell testified on behalf of Holsten that his injuries were significant; however, Dr. Powell was unable to express an opinion as to whether Holsten was capable of making a knowing and conscious refusal. Dr. Powell testified that he never personally examined Holsten and that his testimony was based solely on a review of the hospital report and photographs taken of Holsten's injuries the day after the accident.

Further, the Department asserts that Holsten failed to show that his admitted consumption of an unknown amount of vodka was not a contributing factor to his alleged inability to make a knowing and conscious refusal. We have held that "if a licensee's self-inflicted condition due to his voluntary consumption of alcohol is a factor which contributes to rendering him mentally incapable of making a knowing and conscious refusal to submit to chemical testing, the defense must fail." *Appeal of Cravener*, 135 Pa.Commonwealth Ct. 480, 484, 580 A.2d 1196, 1198–99 (1990). Although the trial court correctly noted in its opinion that "[v]oluntary intoxication may not serve as a defense in license suspension procedure[,]" it made no specific findings on this issue. In addition to Holsten's admission, Dr. Powell testified in this regard as follows:

Q. Do you have an opinion, after reviewing the medical records and the other testimony that was presented here tonight, Doctor, as to Mr. Holsten's state of intoxication that night?

A. That would be a hard thing to assess because it's based on four factors, his size, his weight, how many drinks he had, at what time you would take an alcohol level after he had stopped drinking. And there's also, unfortunately, the factors of how much pain he was in, how that would affect

his response. So I could not give you an informed opinion as to how intoxicated he was at that point.

Q. You read in the—you read in the hospital report that Mr. Holsten was alert, responsive but uncooperative. Do you recall reading that?

A. Yes, I do.

Q. Would that be, Doctor, a sign of—of someone in an intoxicated state?

A. If you're asking me could that be, my answer would be yes. If you're asking me if it was, I'm not sure.

Therefore, we agree with the Department that the evidence fails to establish that Holsten's alleged inability was not due in part to his voluntary consumption of alcohol.

Regardless, Holsten simply did not satisfy his burden of proving a nexus between the injuries he sustained and his refusal to submit to chemical alcohol testing. Therefore, we hold the trial court erred as a matter of law in sustaining the appeal.

Accordingly, the order of the trial court is reversed.

## ORDER

AND NOW, this 5th day of May, 1992, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is reversed. The one-year suspension of driving privileges imposed by the Department of Transportation is reinstated.

This decision was reached and opinion adopted before the conclusion of Senior Judge BARBIERI's service.

KELLEY, Judge, dissenting.

I respectfully dissent.

I believe it is imperative for any structure to have a reliance on its foundation. The foundation for adversarial controversies is in the fact finder. Appellate review is to examine the proprieties and consistencies of initial proceedings as being in accordance with the law.

In this particular case, the trial court made findings upon facts which have been clearly set forth as the standards for the determination of making a "knowing" and "conscious" refusal for chemical testing. The licensee not only described his own condition of medical impairment, but also introduced medical testimony of a doctor relating to the inability of the licensee to make a "knowing" and "conscious" refusal.

Accordingly, I would find that sufficient evidence was introduced and the trial court made a specific finding that the appellate review should sustain. Accordingly, I would affirm the trial court and sustain the licensee's appeal.