668 A.2d 578

COMMONWEALTH of Pennsylvania, Appellee,

v.

Christopher M. EPOCA, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 19, 1995.

Filed Dec. 6, 1995.

Austin F. Grogan, Assistant Public Defender, Camp Hill, for appellant.

Brian W. Perry, Assistant District Attorney, Harrisburg, for Com.

Before POPOVICH, SAYLOR and BROSKY, JJ.

POPOVICH, Judge:

The appellant, Christopher C. Epoca, appeals the judgment of sentence (costs of prosecution and $50 fine) for underage drinking.[1]  We affirm.

The appellant raises a single issue for appellate review: "Did the Commonwealth present evidence which was seized as

1.  18 Pa.C.S.A. § 6308.

a result of an illegal warrantless arrest [upheld as valid by the suppression court]?"

In reviewing the ruling of a suppression court, our initial task is to determine whether the factual findings are supported by the record. In making this determination, we are to consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as fairly read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Goodwin*, 460 Pa. 516, 521–523, 333 A.2d 892, 895 (1975).

The facts reveal that Borough of Middletown Police Officer William N. Eynon received a radio call at approximately 1:30 a.m. on the 20th of November, 1993, regarding a young man named "Vojtas". When the officer arrived at the scene, and while speaking to the operator of the first vehicle, a second vehicle with Vojtas as operator rode past, and the first operator "indicated that was the vehicle and the people." The officer noticed that Vojtas was the driver and the appellant was the passenger, both of whom the officer "knew".

The officer stopped the second vehicle in a parking lot at the Pineford Village apartments where Vojtas lived. What occurred next, as recounted by the officer, was as follows:

> While talking to them, *I knew that the driver was under suspension.* I told him there would be no more driving. *There was a bottle of beer laying in the backseat behind the passenger.* I immediately started taking information. I noticed that Mr. Epoca had red, glassy eyes and an odor of alcoholic beverage on his person. Seeing he wasn't 21 * * * he had his driver's license. I told [Epoca] he was going to be cited for underage drinking. [I p]ut him in the police unit and I dealt with Mr. Vojtas in reference to the driving. We transported Mr. Epoca to the station so he could either call a friend or taxi to go home because I wouldn't permit either one of them to drive.

N.T. 10 (Emphasis added).

The officer seized the full bottle of Zima, in "plain view," from the rear foot-well behind the appellant. Also, after both

occupants exited the vehicle, the police located an empty bottle of Zima under each of the front seats. Prior to arrest, the appellant "volunteered" to police that he "drank a beer or ... had ... some of it...." *Id.* at 13. Thereafter, Vojtas and the appellant were transported to the station "for their own safety." Then, the appellant telephoned a taxi and was taken home.

The court below ruled that the appellant's motion to suppress was meritless and found the appellant guilty as charged. Sentence was imposed and this appeal followed challenging the propriety of evidence seized as the product of an illegal, warrantless arrest. In support of his position, the appellant proffers the recent decision of *Commonwealth v. Bullers*, 536 Pa. 84, 637 A.2d 1326 (1994).

In *Bullers*, the Johnsonburg Borough police received a radio call that a truck reported stolen earlier that evening had been located in an adjacent municipality. Once the Johnsonburg police arrived on the scene, the truck proved to be the stolen vehicle, but a pistol reported by the owner to be in the truck was missing.

Within three hours of the theft, the Johnsonburg police observed the defendant, a known juvenile against whom theft of vehicle charges had been prosecuted in their jurisdiction. Specifically, the defendant was walking along the street when stopped by police and questioned concerning the theft. During the conversation, the police detected an odor of alcohol on the defendant's breath and arrested him for violating 18 Pa.C.S.A. § 6308 (Underage Drinking).

Incident to the arrest, the police conducted a pat-down search and discovered property leading to the defendant's conviction of theft and receiving stolen property. A later search of the defendant at the station produced additional items belonging to the owner of the stolen vehicle, of which the minor was convicted of stealing. All convictions were reversed by this Court on the basis that the evidence seized was the product of a warrantless arrest for the summary offense of underage drinking.

With the grant of *allocatur,* the Supreme Court reviewed the statutory procedures for initiating arrest in summary criminal cases, i.e., 18 Pa.C.S.A. § 6308(d) and 53 P.S. § 46121, for the validity of the arrest controlled the derivative question of whether the search incident thereto was permitted. In doing so, the Court held that, under Section 6308, no warrantless arrest for underage consumption or possession of liquor could occur for the Legislature had provided only for the issuance of a citation for such a violation. However, the Court did make reference to the allowance of an arrest in Bullers' case had he been "engaged in any conduct which would cause the officer to believe that he was a danger to himself or others. Had that been the case, the officer would not have been left with the sole option of issuing a citation." 536 Pa. at 88 n. 2, 637 A.2d at 1328 n. 2.

Also, to the Commonwealth's argument that the evidence was secured incident to a pat-down search conducted while Bullers was being taken into custody for purposes of notifying his parents of the underage drinking charge, our Supreme Court found this to be meritless: *"[T]he search* was not conducted incident to a pat-down search while Bullers was in custody, but *was conducted pursuant to an unlawful arrest for underage drinking."* 536 Pa. at 94 n. 5, 637 A.2d at 1331 n. 5 (Emphasis added). In essence, the *Bullers* Court was pointing out that evidence of the various theft and weapon offenses was secured *as a by-product of the appellant's arrest,* i.e., all the evidence recovered resulted from the police's observations "after" the appellant had been placed under arrest, rendering all evidence suppressible as "fruit" of the illegal arrest.

Here, unlike in *Bullers,* the defendant was a passenger in a vehicle operated by one known to the police to be under suspension. Thus, with the observation of a Motor Vehicle Code violation,[2] the police were justified in stopping the vehicle. This Court said as much in *Commonwealth v. Elliott,* 376 Pa.Super. 536, 548–549, 546 A.2d 654, 660 (1988), in

---

2.  75 Pa.C.S.A. § 1543 (Driving while operating privilege is suspended or revoked).

addition to allowing the passenger to be ordered out of the vehicle when the police had "an articulable basis to believe that criminal activity is afoot without violating the Fourth Amendment." This was taken one step farther in *Commonwealth v. Brown*, 439 Pa.Super. 516, 654 A.2d 1096 (1995), wherein:

we h[e]ld ... that police may request both drivers and their passengers to alight from a lawfully stopped car without suspicion that criminal activity is afoot. Our conclusion [wa]s grounded in the sound rationale of [*Pennsylvania v.] Mimms* [, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) ] which balanced the important interest in the safety of law enforcement officials against the *de minim[i]s* intrusion to the occupants of the lawfully stopped car. We believe[d] the Fourth Amendment [wa]s not violated by such a rule.

439 Pa.Super. at 527, 654 A.2d at 1102. Thus, the stop and direction of the occupants of the Epoca vehicle[3] to exit were both proper under *Mimms* and *Brown*, supra.

With respect to Officer Eynon's observation of a full Zima bottle in the rear foot-well, his *lawful* presence next to the stopped vehicle placed him in a position he had a right to be to observe in "plain view" its contents. See *Commonwealth v. Lopez*, 444 Pa.Super. 441, 448–449, 664 A.2d 154, 158 (1995). Add to this fact that juxtaposed to the Zima was the appellant with red, glassy eyes and emitting an odor of alcohol, along with his admission to consuming alcohol and producing identification placing him under the age of 21.[4]

Under such circumstances, we find that the seizure of the Zima in the rear foot-well and under the front seats of the vehicle was proper.[5] We do so on the strength of *Common-*

3. At trial, the appellant's father testified that the vehicle in question belonged to the father. N.T. 33.

4. As to the right of the police to ask a passenger for identification during a traffic stop, see *Commonwealth v. Elliott*, supra.

5. Even if, *arguendo*, we were to find that the warrantless search of the vehicle after the appellant's arrest, which produced two empty Zima bottles from under the front seats, was illegal (as incidental to an improper arrest versus the issuance of a citation under *Bullers*, supra), the full Zima bottle in "plain view" for the officer to see while outside the vehicle performing an investigatory stop (see *Terry v. Ohio*, 392 U.S.

*wealth v. Trunzo*, 404 Pa.Super. 15, 589 A.2d 1147 (1991), wherein a warrantless automobile search was validated to sustain a conviction for underage drinking. In affirming the conviction, we wrote in relevant part that:

[I]n *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the United States Supreme Court recited the conditions under which a warrantless search of an automobile would be tolerated; *viz:*

"In terms of the circumstances justifying a warrantless search, the Court has long distinguished between an automobile and a home or office. In *Carroll v. United States*, 267 U.S. 132, [45 S.Ct. 280, 69 L.Ed. 543] (1925), the issue was the admissibility in evidence of contraband liquor seized in a warrantless search of a car on the highway. After surveying the law from the time of the adoption of the Fourth Amendment onward, the Court held that automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contained articles that the officers are entitled to seize.

\* \* \* \* \* \*

"Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. \* \* \* [T]hose lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise . . . .

\* \* \* \* \* \*

1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Elliott*, supra) was seizable and sufficient in and of itself to sustain the appellant's conviction for underage drinking. See *Trunzo*, supra.

"The measures of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported." 267 U.S. at 153–154, 155–156 [45 S.Ct. at 285–286].

The Court also noted that the search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest:

"The right to search and the validity of the seizure are not dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." 267 U.S. at 158–159 [45 S.Ct. at 287].

399 U.S. at 48–49, 90 S.Ct. at 1979–1980. To the same effect see *Commonwealth v. Shaffer*, 447 Pa. 91, 104–105, 288 A.2d 727, 735 (1972), wherein it was written:

As we recently stated in *Commonwealth v. Dussell*, 439 Pa. 392, 266 A.2d 659 (1970), the stopping of an automobile or the arrest of the driver of a motor vehicle for an ordinary traffic offense does not without more permit a warrantless search of the vehicle. To justify such a search, even though a movable vehicle involved, an officer must have independent probable cause to believe that a felony has been committed by the occupants of the vehicle, or that it has been used in furtherance of the commission of a felony, or the officer must have a basis for believing that evidence of a crime is concealed within the vehicle, or that there are weapons therein which are accessible to the occupants. See *Commonwealth v. Dussell, supra,* and authorities cited therein.

Quoting *Commonwealth v. Lewis*, 442 Pa. 98, 101, 275 A.2d 51, 52 (1971) (Emphasis deleted). Accord *Commonwealth v. Bailey*, 376 Pa.Super. 291, 296, 545 A.2d 942, 944 (1988).

What is to be garnered from the *Chambers* line of cases is the precept that where facts show that the police had probable cause to believe that evidence of a crime is located within the lawfully stopped vehicle, this same probable cause transcends the stop to "justif[y] the search of every

part of the vehicle and its contents that may conceal the object of the search." [*Commonwealth v.*] *Jenkins,* supra, 401 Pa.Super. [580] at 589, 585 A.2d [1078] at 1083 [ (1991) ], quoting *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982).

In adherence with the law just recited, we find that Officer Bickle had a "basis for believing that evidence of a crime (a Section 6308(a) violation) was concealed within the vehicle." For example, the officer received a call from Constable Willis Bish that he "had a problem" and the police were "needed ... at the inn." Officer Bickle had been to Days Inn on numerous occasions on similar calls. Therefore, given the time (12:00 a.m.), day (Sunday) and information relayed ("a problem" needed attending), he "assumed" that the problem had "something to do with underage drinking." *Once at the site, Officer Bickle questioned the appellant and ascertained his age (19), as well as detecting an "odor" of alcohol on the youth's breath....*

Thus, looking at all of the circumstances in a common-sense fashion and through the eyes of a "trained and experienced" officer, we hold that Officer Bickle's "assumption" escalated to "reasonable" grounds upon the completion of his investigation. *As such, the police acted properly in securing access to the appellant's vehicle and retrieving the beer.*

404 Pa.Super. at 24–27, 589 A.2d at 1151–1153 (Footnote omitted; emphasis added).

In light of *Mimms,* supra; *Brown,* supra; and *Trunzo,* supra, we find that the stop, "plain view" sighting of the alcohol, direction to exit the vehicle, subsequent search and seizure of alcohol therein were not violative of the Fourth Amendment to the United States Constitution.[6]

Judgment of sentence affirmed.

**6.** The police had reason to believe that the Motor Vehicle Code was being violated with the operator of the Epoca vehicle being under suspension. This justified the stop.

Once Officer Eynon positioned himself next to the vehicle, the appellant's physical condition became apparent (red, blood shot eyes and

odor of alcohol) in proximity to a full Zima bottle, all the while being underage and admitting to imbibing. With this information, the police had the right to ask the driver and passenger to exit the vehicle and search its contents. *Brown, supra;* see also *Elliott, supra.*

It needs to be pointed out that the evidence seized from the "plain view" sighting of the Zima in the rear foot-well was sufficient, independent of the two empty Zima bottles searched for and seized from under the front seats following the appellant's arrest, to sustain the appellant's conviction. See note 4, supra.