### Myra J. MARTIN

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted Nov. 12, 2004.

Decided March 18, 2005.

Terrance M. Edwards, Asst. Counsel and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellant.

John B. Mancke, Harrisburg, for appellee.

BEFORE: COLINS, President Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

The Department of Transportation, Bureau of Driver Licensing (Department), appeals from an order of the Court of Common Pleas of Cumberland County (trial court) that sustained the statutory appeal of Myra J. Martin (Martin) from a one-year suspension of her operating privilege pursuant to Section 1547(b) of the Vehicle Code (Implied Consent Law).[1] We reverse.

On November 27, 2003, Hampden Township Police Officer James Sollenberger was on uniformed patrol in a marked police cruiser. At approximately 1:45 a.m. he observed Martin's vehicle proceeding along Trindle Road in Hampden Township. Believing that Martin was exceeding the posted 40 mile per hour speed limit, Officer Sollenberger followed her at a steady distance for approximately 100 yards and, using his speedometer, clocked Martin's speed at 53 miles per hour. Martin reduced her speed and made a wide right turn onto April Drive, a two-lane unmarked street in the Borough of Camp Hill. Notes of Testimony, 5/26/04, at 9 (N.T. ——); Reproduced Record at 25a (R.R. ——). The only vehicles on April Drive were Officer Sollenberger's and Martin's.

As Officer Sollenberger activated his lights to initiate a traffic stop, Martin stopped in front of her residence on April

---

1. It states that "[i]f any person placed under arrest for [driving under the influence of alcohol or controlled substance] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person ... for a period of 12 months." 75 Pa.C.S. § 1547(b)(1)(i).

Drive and exited her vehicle. Officer Sollenberger asked Martin to return to her vehicle and to produce her driver's license, vehicle registration and proof of insurance. Martin had difficulty locating the requested documents. N.T. 9; R.R. 25a. Officer Sollenberger detected an odor of alcohol emanating from the vehicle and noticed that Martin had bloodshot eyes and slurred speech. *Id.* Officer Sollenberger asked Martin to get out of her vehicle, at which point he noticed an odor of alcohol about Martin's person. Martin admitted that she had consumed two glasses of wine that evening at 10:00 p.m. and 12:00 a.m. N.T. 11; R.R. 27a. Martin refused to perform field sobriety tests and began walking toward her house. As Martin became more belligerent, Officer Sollenberger physically restrained her and placed her under arrest for driving under the influence. Officer Sollenberger transported Martin to the West Shore Booking Center at the Lower Allen Township Police Station where she received standard implied consent warnings. Martin was unable to provide two valid breath samples, and her actions were deemed a refusal to submit to a chemical test for blood alcohol content. N.T. 15; R.R. 31a.

By notice dated December 16, 2003, the Department informed Martin that her operating privilege was being suspended for a period of one year in accordance with the Implied Consent Law. Martin filed a statutory appeal to the trial court challenging only Officer Sollenberger's authority to enforce the Implied Consent Law outside of his jurisdiction. Following a *de novo* hearing on May 26, 2004, the trial court found that Officer Sollenberger lacked jurisdiction to stop and arrest Martin outside of his jurisdiction and, therefore, was not a "police officer" for purposes of the Implied Consent Law. The trial court sustained Martin's appeal and reversed her suspension. The Department now appeals.[2]

On appeal, the Department argues that the trial court erred in its determination that Officer Sollenberger lacked extraterritorial authority to enforce the Implied Consent Law. The Department also maintains that the legality of Martin's arrest is immaterial.

The Implied Consent Law provides, in pertinent part, as follows:

(a) **General Rule.**—Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood ... if a *police officer* has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section ... 3802 (relating to driving under influence of alcohol or controlled substance)....

75 Pa.C.S. § 1547(a)(1) (emphasis added). The Vehicle Code defines "police officer" as "[a] natural person *authorized by law to make arrests* for violations of law." 75 Pa.C.S. § 102 (emphasis added). Thus, a plain reading of Section 1547(a) evidences the legislature's intent to trigger the provisions of the Implied Consent Law only when a person with legal authority to make an arrest has reasonable cause to believe a motorist has been driving while

---

**2.** In reviewing a decision of the trial court in a license suspension case, the standard of review of an appellate court is to determine if the factual findings of the trial court are supported by competent evidence, and whether the trial court committed an error of law or an abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Scott,* 546 Pa. 241, 247, 684 A.2d 539, 542 (1996).

intoxicated. *Snyder v. Commonwealth*, 163 Pa.Cmwlth. 178, 640 A.2d 490, 492 (1994). Where a licensee challenges the legal authority of the arresting officer, as opposed to some aspect of the manner of the arrest, the Department bears the burden of proving that the officer had such authority. *Id.*[3]

■ The Department argues, and we agree, that the Municipal Police Jurisdiction Act (MPJA), 42 Pa.C.S. §§ 8951–8954, is controlling on the issue of Officer Sollenberger's authority. The MPJA grants broad authority to municipal police officers to enforce the laws of this Commonwealth within their primary jurisdiction. 42 Pa. C.S. § 8952.[4] The MPJA also provides for statewide municipal police jurisdiction in certain situations, one of which is relevant here:

> (a) **General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:
>
> * * *
>
> (5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

42 Pa.C.S. § 8953(a).[5] Our Supreme Court has acknowledged that the MPJA "should be liberally construed to effectuate

---

**3.** In a typical license suspension case the Department must establish that the licensee: (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in a license suspension. *Department of Transportation, Bureau of Driver Licensing v. Holsten*, 150 Pa.Cmwlth. 1, 615 A.2d 113, 114–115 (1992) (quoting *Commonwealth v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989)). In this case, Martin stipulated that the Department satisfied the second, third and fourth elements of its *prima facie* case. N.T. 5; R.R. 21a. Her challenge to Officer Sollenberger's authority to arrest her relates to the first element.

**4.** It provides as follows:
Any duly employed municipal police officer shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office anywhere within his primary jurisdiction as to:
(1) Any offense which the officer views or otherwise has probable cause to believe was committed within his jurisdiction.

(2) Any other event that occurs within his primary jurisdiction and which reasonably requires action on the part of the police in order to preserve, protect or defend persons or property or to otherwise maintain the peace and dignity of this Commonwealth. 42 Pa.C.S. § 8952.

**5.** Although the parties cite extensively to *McKinley v. Department of Transportation, Bureau of Driver Licensing*, 576 Pa. 85, 838 A.2d 700 (2003), that case has no application here. In *McKinley*, our Supreme Court held that airport officers lack the authority to enforce provisions of the Implied Consent Law outside of their territorial boundaries absent an express legislative grant of extraterritorial authority. By contrast, our General Assembly, by enacting the MPJA, has expressly authorized municipal police officers like Officer Sollenberger to enforce laws outside of their primary jurisdiction. *See also Stein v. Department of Transportation, Bureau of Driver Licensing*, 857 A.2d 719 (Pa.Cmwlth.2004) (distinguishing *McKinley* in case involving extraterritorial authority of municipal police officer).

its purposes, one of which 'is to provide police officers with authority to make arrests outside of their primary jurisdictions in limited situations.'" *Commonwealth v. Merchant*, 528 Pa. 161, 168, 595 A.2d 1135, 1138 (1991) (quoting *Commonwealth v. Ebersole*, 342 Pa.Super. 151, 492 A.2d 436, 438 (1985)). *See also Commonwealth v. Pratti*, 530 Pa. 256, 608 A.2d 488 (1992) (arresting officer on "official business" when he stopped and detained defendant; officer was traveling toward his routine turnaround point outside of his jurisdiction when he heard an automobile accident).

Applying subsection (a)(5) to the facts of this case, we find that Officer Sollenberger was "on official business" prior to and during his encounter with Martin. He was on routine patrol in a marked police cruiser in an area within his primary jurisdiction, albeit at the boundary with neighboring Camp Hill Borough. He was also in uniform and was unquestionably identifiable as a police officer. While still in his primary jurisdiction, Officer Sollenberger viewed at least one offense by Martin, speeding, as evidenced by his uncontroverted testimony that he clocked her speed for a distance of approximately 100 yards.[6] He viewed a second offense on the geographical boundary when Martin made a wide right turn onto April Drive and crossed over the opposing lane. Together these acts of erratic driving presented an immediate clear and present danger to persons or property and further investigation was warranted. That the events occurred in a short period of time and happened to traverse a jurisdictional boundary should not negate Officer Sollenberger's authority. By concluding otherwise, the trial court thwarted the liberal construction of the MPJA mandated by our Supreme Court.

■ Section 1547(a) of the Vehicle Code requires, in addition to the arresting officer's authority, "reasonable grounds" for the officer to believe the licensee was driving under the influence of alcohol. 75 Pa.C.S. § 1547(a)(1). Here, there were several indicia of Martin's intoxication, including an odor of alcohol emanating from her vehicle and about her person, her bloodshot eyes, slurred speech and difficulty producing her license, registration and insurance documentation. Martin also admitted to Officer Sollenberger that she had consumed alcohol only hours before her arrest. Under these circumstances, Officer Sollenberger unquestionably had reasonable grounds to believe Martin had driven her vehicle while intoxicated.

In accordance with the foregoing analysis, we reverse the order of the trial court sustaining Martin's appeal and reversing her suspension.

## ORDER

AND NOW, this 18th day of March, 2005, the order of the Court of Common Pleas of Cumberland County dated June 2, 2004, in the above-captioned matter is hereby REVERSED.

---

6. We acknowledge that because Officer Sollenberger clocked Martin's speed for only 100 yards that she could not be *charged* with speeding. 75 Pa.C.S. § 3368(a) (valid speedometer clock must be measured "for a distance of not less than three-tenths of a mile."). This is of no moment, however, since a license suspension is a civil proceeding. *See Banner v. Department of Transportation, Bureau of Driver Licensing*, 558 Pa. 439, 444, 737 A.2d 1203, 1206 (1999) ("Thus the licensee's operating privileges could be suspended for refusing chemical testing even though the initial stop of his vehicle did not comport with constitutional mandates."); *Department of Transportation v. Wysocki*, 517 Pa. 175, 179, 535 A.2d 77, 79 (1987) ("[F]or purposes of a license suspension proceeding for refusal to submit to a breathalyzer test, the legality of the arrest [is] immaterial.").

Dissenting Opinion by President Judge COLINS.

I must vigorously dissent from the well-written opinion of the majority, as it seems we are coming perilously close to turning a blind eye to questionable conduct by our police officers. While I acknowledge that our police officers are charged with the awesome and sometimes onerous responsibility of protecting the public, I cannot sanction the whisperings of the majority that that protection comes at the deprivation of the constitutional rights of citizenship. We do not want a police state, and it seems we are on the precipice of becoming one, in the name of DUI. I suggest that the Court, and the police, can ill afford to sanction this type of conduct.

The facts here are like those of so many other cases. In the early morning hours of November 27, 2003, Officer Sollenberger of the Hampden Township Police saw a vehicle driving in front of his marked police cruiser on Trindle Road in Hampden Township. For no cause other than that Officer Sollenberger felt that the car was driving at a rate of speed above the 40–miles–per–hour limit posted for the road, he followed the vehicle at a steady distance for 100 yards. Based on his own speedometer reading, he clocked its speed at 53 miles per hour. The vehicle reduced its speed and while still on Trindle Road, entered the separate jurisdiction of the Borough of Camp Hill. After properly signaling, the driver made a wide right turn, avoiding several large potholes, onto April Drive, a two-lane unmarked side street in Camp Hill. Officer Sollenberger did not notice the potholes in the road at the time

of the stop, but Martin produced photos and testimony at trial to show that a wide turn was necessary to avoid the potholes at that intersection. Officer Sollenberger's and Martin's vehicles were the only traffic on the road at the time. Martin then continued on April Drive in the right lane, and as Officer Sollenberger turned on his lights to initiate a traffic stop, Martin stopped in front of 202 April Drive, Martin's residence. At this point, Officer Sollenberger was outside of his primary jurisdiction and had no probable cause to issue a ticket for any violations of the vehicle code or otherwise make an arrest.

After the vehicle stopped, Martin got out of her car. Officer Sollenberger also got out of his cruiser and requested that Martin return to her vehicle. She did. Officer Sollenberger then requested that Martin produce her license and vehicle registration. She did. Officer Sollenberger detected an odor of alcohol from the vehicle and noticed that Martin had blood-shot eyes and slurred speech. Officer Sollenberger requested that Martin get out of her vehicle, at which point, he noticed the smell of alcohol emanating from Martin. Martin admitted to having had two glasses of wine, one at 10 P.M. and another at 12 A.M. Officer Sollenberger asked Martin to perform field sobriety tests, and in response she started to walk to her house. Officer Sollenberger told her to stop, but she kept going. He took hold of Martin and arrested her for driving under the influence and had to physically place her in the police cruiser. He drove her to the booking center where he informed her of the Implied Consent Law[1] and asked her

1. The Implied Consent Law at Section 1547(a) of the Vehicle Code, 75 Pa.C.S. § 1547(a), states in relevant part: "Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of the blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been

to supply a breath test. Martin refused to provide two good breath tests.

There is no dispute as to whether Martin was arrested for driving under the influence, nor is there a dispute as to whether she refused chemical testing. The sole issue in this case is whether Officer Sollenberger had extraterritorial jurisdiction when he stopped and arrested Martin in the Borough of Camp Hill qualifying Officer Sollenberger as a "police officer" for purposes of the Implied Consent Law.

In disagreeing with the majority on this issue, I do not question the officer's diligence, nor his honor and integrity in protecting the community. I do, however, challenge the methodology. The majority sanctions the conduct of Officer Sollenberger and rather glibly admits that they would sanction such conduct even if the officer's conduct were *not* authorized by the law known as the Municipal Police Jurisdiction Act (MPJA), 42 Pa.C.S. §§ 8951–8954.[2] This, despite the majority's position that the MPJA controls the issue of Officer Sollenberger's authority to act extraterritorially. Thus, I lay the blame at our door for allowing this conduct to escalate.

For purposes of the Implied Consent Law at issue here, the Vehicle Code at Section 102 defines "police officer" as "[a] natural person authorized to make arrests

for violations of law." 75 Pa.C.S. § 102. Officer Sollenberger was operating outside his primary jurisdiction of Hampden Township. In determining whether Officer Sollenberger was authorized to make an arrest in the Borough of Camp Hill, this Court must follow the direct precedent of *McKinley IV*,[3] as handed down by the Pennsylvania Supreme Court, concerning the ability of limited jurisdiction police officers to act in implementation of the Implied Consent Law. *McKinley v. Department of Transportation, Bureau of Driver Licensing*, 576 Pa. 85, 838 A.2d 700 (2003) (*McKinley IV*). In discussing limited jurisdiction police officers, the Supreme Court stated that "as the Legislature has circumscribed their police authority, we hold that they lack the ability to act as police officers in implementation of the Implied Consent Law outside territorial boundaries, in the absence of an express, legislative grant of extraterritorial authority." 576 Pa. at 94, 838 A.2d at 706. The Legislature has expressly addressed the extraterritorial authority of municipal police officers.[4] This express grant of extraterritorial jurisdiction for municipal police officers has already been noted by this Court in *Stein*, which distinguishes the respective statutory grants of authority of municipal officers from those of the airport police officers that were addressed in our Supreme Court's holding in *McKinley IV*. *Stein v. Department of Transportation,*

---

driving, operating or in actual physical control of the movement of a vehicle...." Further, Section 1547(b)(i) states in relevant part: "If any person placed under arrest for a violation of section 3802 [formerly Section 3731 relating to driving under the influence of alcohol or other controlled substance] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person ... for a period of 12 months." 75 Pa.C.S. § 1547(b)(i)

**2.** "We would reach the same result even if Officer Sollenberger's conduct was not technically authorized under the MPJA." Majority Opinion, at footnote 7.

**3.** The majority contends that *McKinley IV* has no application here. Nevertheless, the majority attempts to find the express legislative grant of authority that *McKinley* mandates.

**4.** Judicial Code, 42 Pa.C.S. § 8953(a) and (b).

*Bureau of Driver Licensing,* 857 A.2d 719, 726 (Pa.Cmwlth.2004).[5] Under the facts of the present case, I conclude that none of the circumstances outlined in 42 Pa.C.S. § 8953(a) apply to Officer Sollenberger's actions. We agree with the trial court that Officer Sollenberger witnessed no violations of the Vehicle Code while within his primary jurisdiction of Hampden Township. Officer Sollenberger did not get a valid speedometer clock of Martin's vehicle because, as Officer Sollenberger testified, he clocked Martin's car for only 100 yards. The Vehicle Code at 75 Pa.C.S. § 3368(a) requires that for a speedometer clock to be valid the vehicle's speed must be measured "for a distance of not less than three-tenths of a mile." *Commonwealth v. Whitmyer,* 542 Pa. 545, 668 A.2d 1113 (1995) (Pennsylvania Supreme Court held clocking for two-tenths of a mile insufficient to constitute probable cause of a speeding violation). All other driving and conduct of Martin witnessed by Officer Sollenberger took place outside his primary jurisdiction, where he lacked authority to make an arrest. Martin's arrest for driving under the influence was also made without the requisite authority. Consequently, Martin's refusal to submit to chemical testing was a legal nullity and the Implied Consent Law does not apply. *Snyder v. Commonwealth,* 163 Pa.Cmwlth. 178, 640 A.2d 490 (1994).

I hesitantly reference the criminal law's "fruit of the poisonous tree" doctrine, as I must acknowledge that license suspension proceedings are civil in nature. However, as stated by our Superior Court in *Commonwealth v. Scattone,* 448 Pa.Super. 533, 672 A.2d 345, 348 n. 5 (1996),

> [a] police stop of a motorist without probable cause or articulable suspicion of criminal activity would taint the seizure of evidence as "fruit of the poisonous tree" and render it suppressible. See *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Commonwealth v. Epoca,* 447 Pa.Super. 183, 668 A.2d 578 (1995); and *Commonwealth v. Dennis,* 289 Pa.Super. 305, 433 A.2d 79 (1981). Thus, the police are not given *carte blanche* to stop indiscriminately all motorists without sacrificing the suppression of evidence seized as a result of an unlawful stop.

In this case, I believe the officer's stop was indiscriminate, and as such, the officer lacked reasonable grounds to stop the vehicle. For the foregoing reasons I would affirm the trial court.

Accordingly, I respectfully dissent.

**5.** Specifically, based on the facts in *Stein,* this Court noted that Section 8953(a) of the Judicial Code grants municipal police officers jurisdiction to enforce the laws of the Commonwealth beyond their primary jurisdiction in the following circumstances: where the officer is in hot pursuit; where the officer has obtained the prior consent of the chief law enforcement officer, or person authorized by him to give consent, of the recognized law enforcement agency that provides primary police services to political subdivision; and where the officer is on official business and views an offense or has probable cause to believe that an offense has been committed.