J-S59020-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LENO D. MESCOLOTTO | |
| Appellant | No. 3209 EDA 2013 |

Appeal from the Judgment of Sentence October 24, 2013
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-SA-0000210-2013

BEFORE:  SHOGAN, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 10, 2014**

Leno D. Mescolotto appeals from the judgment of sentence entered in the Court of Common Pleas of Lehigh County following his conviction for speeding.  Upon review, we affirm.

The trial court summarized the facts of this matter as follows:

On May 1, 2013, Officer Nathan Schlegel of the Upper Macungie Township Police Department was monitoring traffic on a portion of State Route 222 (SR-222) that runs through Upper Macungie Township (Township).  The Township has entered into an intergovernmental agreement with the Pennsylvania State Police (PSP) granting the Township the authority to enforce speed restrictions on portions of SR-222.

At approximately 10:00 AM, Officer Schlegel was utilizing a VASCAR-plus® III speed timing device, which was approved by the Department of Transportation and was tested for accuracy on April 1, 2013.  Schlegel observed a silver Mercedes Benz

_____

[*] Retired Senior Judge assigned to the Superior Court.

E350m, bearing registration number HTB3223, traveling southbound on SR-222 and timed the vehicle traveling 75 miles per hour. The posted speed limit in that area is 45 miles per hour. Schlegel initiated a traffic stop. Before Schlegel could get out of his vehicle, the driver of the Mercedes, later identified as [. . .] Mescolotto, exited his vehicle. Schlegel exited his car and ordered [Mescolotto] to get back in his vehicle. [Mescolotto] eventually complied, and Schlegel approached the vehicle. Schlegel advised [Mescolotto] he was stopped for speeding, and obtained [Mescolotto's] license, registration, and insurance information. Once he completed the citation, Schlegel asked [Mescolotto] to sign it. [Mescolotto] asked Schlegel twice if he could reduce the speed. When Schlegel said he could not, [Mescolotto] handed the citation back and said he would not sign it. Schlegel noted the refusal on the citation, gave a copy to [Mescolotto], and ended the traffic stop.

Trial Court Opinion, 1/22/14, at 1-2.

On July 16, 2013, a magisterial district judge found Mescolotto guilty of driving 75 mph in a 45 mph zone, and ordered Mescolotto to pay costs and fines. Mescolotto filed a timely notice of summary appeal on August 14, 2013, and a motion to suppress on September 16, 2013. On October 24, 2013, the trial court denied Mescolotto's suppression motion after a hearing. The judge immediately proceeded to a summary appeal trial, finding Mescolotto guilty of driving 65 mph in a 45 mph zone and ordering him to pay costs and fines. This timely appeal followed.[1]

On appeal, Mescolotto presents the following issues for our review:

---

[1] On August 8, 2014, the Commonwealth filed a motion to supplement the record pursuant to Pa.R.A.P. 1926. We deny the Commonwealth's motion because the document it seeks to enter into evidence, "The Chief of Police Employment Agreement," is not material to our disposition of this case.

1. Whether the court erred in denying the omnibus pretrial motion by failing to apply the clear rule of law, as set forth in 75 Pa.C.S. § 6109(b), requiring any agreements between the Commonwealth of Pennsylvania and the local municipal police department to be adopted by ordinance of the municipality.

2. Whether the court erred by failing to apply the requirements of the Pennsylvania Municipal Law, namely 53 Pa.C.S. § 2305 and § 2315 requiring an ordinance to adopt any intergovernmental agreements.

3. Whether the court erred in failing to consider the relevant provisions of the Pennsylvania Motor Vehicle Code, namely 75 Pa.C.S. § 6109(a), which requires that an agreement be in place before speed restrictions may be enforced by local police and the ancillary requirements of 75 Pa.C.S. § 6109(b) which require that any such action by local authorities be taken by ordinance of the governing body.

4. Whether the court erred in failing to comply with the requirements of the Pennsylvania Superior Court in **Commonwealth v. Bable**, 385 A.2d 530 (Pa. Super. 1998) and **Commonwealth v. Shenkin**, 487 A.2d 380 (Pa. Super 1985), relating to authority of the police officer to act on the limited access highway under state jurisdiction.

5. Whether the court erred by failing to consider whether the police officer had probable cause for the traffic stop and applying the totality of circumstances to make such a determination.

6. Whether the court erred in failing to consider the officer's testimony as suspicious based on the lack of credibility of the officer and based upon his actions concerning the traffic stop and his egregious conduct.

Brief of Appellant, at 4. All of Mescolotto's issues on appeal relate to the trial court's denial of his suppression motion. Our standard of review when the trial court denies a suppression motion is as follows:

> [T]his Court's review is limited to determining whether the court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed in the suppression court,

we consider only the Commonwealth's evidence and so much of the appellant's evidence as is uncontradicted when read in the context of the record as a whole. Where the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn from them are erroneous.

***Commonwealth v. West***, 937 A.2d 516, 527 (Pa. Super. 2007) (internal citations omitted).

The trial court's denial of Mescolotto's suppression motion was premised on the validity of the "Full Time Municipal/Regional Police Department Speed Enforcement Intergovernmental Agreement with the Pennsylvania State Police" (Agreement). Mescolotto asserts that Officer Schlegel lacked authority to enforce speed restrictions on SR-222, a divided highway, because the Agreement under which he purported to act, was a legal nullity. Mescolotto contends that the Agreement is an intergovernmental cooperation agreement as defined in Section 2304 of the General Local Government Code[2] and, as such, the Agreement was required to be implemented by ordinance in order to be enforceable. ***See*** 53 Pa.C.S.

_____

[2] Section 2304 provides:

> A municipality by act of its governing body may, or upon being required by initiative and referendum in the area affected shall, cooperate or agree in the exercise of any function, power or responsibility with, or delegate or transfer any function, power or responsibility to, one or more other local governments, the Federal Government to any other state or its government.

53 Pa.C.S. § 2304.

§ 2305;[3] **see also** 75 Pa.C.S. § 6109(b).[4]  The Commonwealth, relying on

**Stein v. DOT, Bureau of Driver Licensing**, 857 A.2d 719 (Pa. Cmwlth.

2004), argues that the Municipal Police Jurisdiction Act (MPJA)[5] controls and,

therefore, the Agreement authorizing Officer Schlegel to act is valid.

We agree with Mescolotto that intergovernmental cooperation

agreements are effected upon each municipality's adoption of an ordinance.

**See** 53 Pa.C.S. §§ 2305, 2315.  Failure to do so renders an

intergovernmental agreement void.  **Commonwealth v. Bable**, 385 A.2d

530 (Pa. Super. 1978).  However, a police officer's ability to act outside of

his jurisdiction is governed by the MPJA, not the Local Government Code.[6]

**Stein**, **supra**.

---

[3] Section 2305 provides:

> A local government may enter into intergovernmental cooperation with or delegate any functions, powers or responsibilities to another governmental unit or local government upon the passage of an ordinance by its governing body. If mandated by initiative and referendum in the area affected, the local government shall adopt such an ordinance.

53 Pa.C.S. § 2305.

[4] Section 6109(b) provides:  "Action taken by local authorities under this section shall be:  (1) by ordinance of the local governing body; or (2) by a commission or public official authorized to act on specified matters."  75 Pa.C.S. § 6109(b).

[5] 42 Pa.C.S. §§ 8951-8954.

[6] The Statutory Construction Act instructs that if concurrent application of statutes is not possible, the specific provision shall prevail and be construed as an exception to the general provision.  1 Pa.C.S. § 1933.  The relevant
*(Footnote Continued Next Page)*

The MPJA authorizes a municipal police officer to act outside his primary jurisdiction in specific circumstances. The clear purpose of the MPJA is to encourage cooperation between law enforcement agencies by expanding their primary jurisdiction through official, cooperative agreements. *Commonwealth v. Sestina*, 546 A.2d 109 (Pa. Super. 1998). Its purpose is to be liberally construed. *Id.* citing *Commonwealth v. Ebersole*, 492 A.2d 436 (Pa. Super. 1985). The MPJA does not, however, require a municipality to enact an ordinance before an officer from one municipality may take police action in another municipality. The section of the MJPA relevant here states:

> Where the officer has obtained the prior consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which provides primary police services to a political subdivision which is beyond that officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties which arise form official matter within his primary jurisdiction.

42 Pa.C.S. § 8953(a)(4).

Here, UMTPD Chief Edgardo Colon and Major Timothy Mercer, the Director of the Bureau of Patrol of the State Police, entered into a section

_(Footnote Continued)_ ————————

sections of the Local Government Code apply to "all local governments." 53 Pa.C.S. § 2301. The MPJA applies only to "duly employed municipal police officer(s)." 42 Pa.C.S. § 8953(a). Further, the MPJA enumerates a discrete set of circumstances under which a municipal police officer may exercise extra-territorial authority. Accordingly, the MPJA is controlling here.

8953(a)(4) agreement on January 7, 2013.[7] ***See*** Agreement 1/7/13. The Agreement specifically authorizes UMTPD to patrol SR-222: "The Upper Macungie Township Police Department, [. . .], shall have the authority to enforce speed restrictions in accordance with Title 75, Chapter 33, Subtitle F, on the following limited-access or divided highway within its jurisdiction: SR-222 Bypass." As such, UMTPD and the PSP properly executed an agreement authorizing Macungie Township police officers to enforce speed limits on SR-222 under the MPJA.

Furthermore, to the extent an implementing ordinance was required, Upper Macungie Township did implement two ordinances authorizing the UMTPD to enforce maximum speed limits and use approved speed-timing devices on state highways within the Township. As the Honorable James T. Anthony astutely explained in his Pa.R.A.P. 1925(a) Opinion,

> Section 6109(a)(11) of the Vehicle Code authorizes local authorities to enforce speed restrictions on a divided highway only if it is patrolled by the local police force under the terms of an agreement with the PSP. Furthermore, § 6109(b) requires that any action taken by local authorities shall be by ordinance or by a public official authorized to act on specified matters.

---

[7] Mescolotto, relying on ***Commonwealth v. Bable***, 385 A.2d 530 (Pa. Super. 1978), insists that police departments lack the authority to enter into municipal cooperation agreements. ***Id.*** at 531. However, this Court made that comment in passing and, therefore, as Mescolotto admits, it is *dicta*. Moreover, 42 Pa.C.S. § 6109(a)(11) provides for this exact type of agreement, which became effective on January 7, 2013. Therefore, Officer Schlegel was authorized to enforce speed restrictions on SR-222.

Here, an agreement under § 6109(a)(11) was entered into by the Township and the PSP on January 7, 2013 [. . . ] What is required by § 6109(b) is that the "action taken by local authorities" – in this case, speed enforcement – be authorized by ordinance. The Upper Macungie [Township] Code does in fact authorize the police department to enforce maximum speed limits and to use approved speed timing devices. Upper Macungie Township, Pa., Code of Ordinances § 15-109[8] and § 15-201. As such, the Township and the PSP properly executed an agreement authorizing the township police department to enforce speed limits on SR-222.

Trial Court Opinion, 1/22/14, at 3.

Upper Macungie Township has clearly evidenced its intent that the UMTPD enforce speeding laws within its geographical limits, without regard to whether the roadways in questions are under county, state, or township control. Thus, we reject Mescolotto's argument that the Agreement was

_____

[8] Section 15-109 provides:

1. The Township Police Department is hereby authorized to use all mechanical or electronic speed-timing devices for the determination of speed of a motor vehicle as are approved or will be approved by the Department of Transportation of the Commonwealth of Pennsylvania, including but not limited to E.S.P.

2. This Section authorizes the use of said devices upon all highways within the Township of Upper Macungie, be they Township, county or state highways, and does also hereby elect to exercise all powers granted to "local authorities" under the Pennsylvania Motor Vehicle Code, 75 P.S. §§ 1101 et seq. (1977), as hereafter amended, supplemented, modified or reenacted by the General Assembly of Pennsylvania.

[Ord. 12-86, 6/5/1986; as amended by Ord. 2007-4, 5/3/2007].

without effect in the absence of Upper Macungie Township adopting an implementing ordinance.

For the aforementioned reasons, the trial court correctly concluded that Upper Macungie Township and the PSP properly executed an agreement authoring the UMTPD to enforce speed limits on SR-222. Because the Agreement is valid, Officer Schlegel had the authority to initiate a traffic stop when he observed Mescolotto speeding on SR-222. Therefore, it was at the discretion of the suppression court to determine whether, under the law, any evidence relating to the traffic should have been suppressed. Because the record supports the suppression court's factual findings, we are bound by those facts and will not reverse the court's decision to deny Mescolotto's suppression motion.

Mescolotto's final two issues on appeal are waived. Upon thorough review of the record, it is evident that Mescolotto did not raise the issue of probable cause in his omnibus pretrial motion, at trial, or in a post-sentence motion. *See* Pa.R.A.P. 302. Likewise, Mescolotto did not challenge the weight of the evidence before the trial court prior to sentencing, at sentencing, or in a post-sentence motion. *See* Pa.R.Crim.P. 607(A); *see also Commonwealth v. Holley*, 945 A.2d 241, 245-46 (Pa. Super. 2008) (this Court cannot entertain, in the first instance, a claim that the verdict is against the weight of the evidence). Accordingly, both claims are waived.

Judgment of sentence affirmed. Commonwealth's motion to supplement the record denied.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/10/2014</u>