IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maurice Weston,                  :
             Appellant       :
                            :   No.  698 C.D. 2020
             v.               :
                            :   Submitted: February 5, 2021
Commonwealth of Pennsylvania,   :
Department of Transportation,     :
Bureau of Driver Licensing        :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE J. ANDREW CROMPTON, Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                  FILED:  May 5, 2021

Maurice Weston (Licensee) appeals, *pro se*, from the January 21, 2020 order of the Court of Common Pleas of Bucks County (trial court) denying his appeal from a one-year suspension of his operating privilege imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT), under section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. §1547(b)(1)(i), commonly referred to as the Implied Consent Law.[1]

---

[1] Section 1547(b)(1)(i) reads, in pertinent part, as follows:

> (1) If any person placed under arrest for a violation of section 3802 [(relating to driving under the influence of alcohol or a controlled substance)] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
>
>     (i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa. C.S. §1547(b)(1)(i).

**Facts and Procedural History**

On June 22, 2019, while patrolling an area of Interstate 95, Pennsylvania State Police Trooper Richard Sentak observed a vehicle, which he later learned was driven by Licensee, travelling erratically. (Original Record (O.R.) Item No. 7; Notes of Testimony (N.T.), 1/21/2020, at 7.) More specifically, Trooper Sentak observed the vehicle leave the lane of travel several times without properly signaling a lane change, crossing over the white line that separated the left lane from the shoulder of the road, and reaching speeds of 84 and 95 miles per hour in a 55-mile-per-hour zone. (N.T. at 7-8.)

Trooper Sentak initiated a traffic stop and, upon approaching the vehicle and requesting Licensee's license, detected a smell of alcohol coming from the vehicle. (N.T. at 8.) Trooper Sentak also observed that Licensee's eyes were glassy and bloodshot. *Id.* Trooper Sentak requested that Licensee exit the vehicle and administered the horizontal gaze nystagmus test to Licensee. *Id.* Licensee's "eyes had the lack of smooth pursuit, distinct and sustained nystagmus and onset prior to 45." (N.T. at 8-9.) Trooper Sentak began explaining two more field sobriety tests, the walk and turn and the one-leg stand, but Licensee declined to perform those tests, citing his back problems that might affect his balance. (N.T. at 9.) Trooper Sentak administered a preliminary breath test to Licensee, which revealed the presence of alcohol above the legal limit. *Id.* At this point, Licensee was placed under arrest for suspicion of driving under the influence (DUI). *Id.*

After placing Licensee in the back of his patrol vehicle, Trooper Sentak stood next to the back of the car and read Licensee verbatim the implied consent

2

warnings of the DL-26 form.[2]  (N.T. at 9.)  Trooper Sentak then asked Licensee to submit to a blood test, but Licensee refused.  *Id.*  Trooper Sentak signed the DL-26 form stating that he read the warnings to Licensee and offered Licensee an opportunity to submit to chemical testing, but that Licensee refused the test.  (N.T. at 9-10; *see also* O.R. Item No. 11 at Exhibits.)  Licensee also refused to sign the DL-26 form.  (N.T. at 10; O.R. Item No. 11 at Exhibits.)  Trooper Sentak subsequently reported Licensee's refusal to DOT.

By letter dated July 18, 2019, DOT notified Licensee that his operating privilege was being suspended for one year as a result of this refusal.  (O.R. Item No. 1.)  Licensee filed a statutory appeal with the trial court.  (O.R. Item No. 1.)  The trial court conducted a hearing on January 21, 2020.  (O.R. Item No. 7.)

At trial, DOT offered into evidence the July 18, 2019 notice of suspension (Exhibit C1), Bureau of Driver Licensing Certified Driving History for Licensee dated July 30, 2019 (Exhibit C2), and the DL-26 form signed by Trooper Sentak, which noted Licensee's refusal to sign (Exhibit C3).  (N.T. at 2-6.)  Notably, the Bureau of Driver Licensing Certified Driving History for Licensee, dated July 30, 2019 (Exhibit C2), indicated that Licensee's license was previously suspended for six months pursuant to former section 1532(c) of the Vehicle Code,[3] *formerly* 75 Pa.C.S. §1532(c), following

---

[2] The DL-26 form contains the chemical testing warnings required by section 1547 of the Vehicle Code, 75 Pa. C.S. §1547, pursuant to our Supreme Court's decision in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989).  These warnings inform a motorist that he is under arrest; that he is being requested to submit to a chemical test; that he will lose his operating privilege and potentially face stricter criminal penalties if the request is refused; and that there is no right to remain silent or speak to an attorney.

[3] Former Section 1532(c) of the Vehicle Code, *formerly* 75 Pa.C.S. §1532(c), authorized DOT to "suspend the operating privilege of any person upon receiving a certified record of the person's conviction of any offense involving the possession, sale, delivery, offering for sale, holding for sale or giving away of any controlled substance."  The Act of October 24, 2018, P.L. 659, No. 95 (Act **(Footnote continued on next page…)**

a December 18, 2000 conviction for possession of a controlled substance pursuant to Section 13(a)(16) of The Controlled Substance, Drug, Device and Cosmetic Act,[4] 35 P.S. §780-113(a)(16). Licensee had no objection to the introduction of these three exhibits. (N.T. at 6.)

DOT thereafter presented the testimony of Trooper Sentak, who related the above-described events. (N.T. at 6-10.) On cross-examination, Trooper Sentak explained that although Licensee had completed the preliminary breath test, he explained to Licensee that Licensee's blood alcohol content would also be determined by chemical testing. (N.T. at 11.) At the police barracks, Trooper Sentak showed Licensee the form once more and asked him to sign it. (N.T. at 13.) He explained to Licensee that the form served as an acknowledgment that Trooper Sentak read the warnings to Licensee. (N.T. at 13.) Licensee asked if Trooper Sentak had explained the consequences of refusing to sign the form, at which point Trooper Sentak stated:

> Yes. On the side of the road when I originally read you the form. I was standing directly next to you. I said, I'm going to start right here where it says ["]It is my duty as a police officer to inform you of the following["] -- and I read verbatim down -- as well as you're more than welcome to follow along.

(N.T. at 13.)

Licensee testified on his own behalf, conceding that he was drinking on the night of the incident and that it was a mistake. (N.T. at 15.) However, Licensee disputed that Trooper Sentak read him the warnings on the DL-26 form, or that Trooper

95), repealed this provision. Section 5 of Act 95 states: "This act shall take effect in 180 days [April 22, 2019.]" *Id.*

[4] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§780-101 - 780-144.

Sentak informed him of the consequences of refusing a blood test. (N.T. at 15, 17.) Instead, Licensee maintained that "at no point did I ever really technically refuse the blood test." (N.T. at 20.) Licensee further explained:

> I'm a reasonable person, and I have a reasonable mind. And if I was -- if this officer would have said to me that the consequences for not taking this blood test is that your license will be suspended for a year, there is no way I would have denied this. There is no way.
>
> . . . .
>
> I was drinking, and I was wrong, but to refuse to give a blood test and have my license suspended is just not true. I would not have done that. I never refused a blood test on [those] grounds. I never said I was going to refuse a blood test. I had a piece of paper sat in front of me, and he asked me about a blood test. I said, ["]Why do I have to take a blood test? Because I just took a BAC test, a breathalyzer test.["]
>
> . . . .
>
> But I just do not recall him telling me. I don't even believe he did.

(N.T. at 15, 17-18.)

Licensee testified that once Trooper Sentak transported Licensee to the police barracks, Trooper Sentak showed him the DL-26 form before being fingerprinted. (N.T. at 19.) Licensee explained to the trial court that Trooper Sentak asked him to sign the form to acknowledge that he had refused the blood test, but he declined, stating "Well, I'm not signing anything that I don't know what I'm signing[.]" *Id.* Licensee conceded that he did not read the form. *Id.* According to Licensee, once Trooper Sentak fingerprinted him, he was released. *Id.* Licensee testified that when he received the July 18, 2019 notice of suspension in the mail, he "could not believe it" and did not understand why his license was suspended. *Id.*

5

By order dated January 21, 2020, the trial court denied and dismissed Licensee's appeal and directed that the one-year suspension of his operating privilege be reinstated. (O.R. Item No. 6.) Licensee thereafter filed a notice of appeal. (O.R. Item No. 8.)[5] By order dated February 11, 2020, the trial court directed Licensee to file a concise statement of errors complained of on appeal within 21 days of entry of the order. (O.R. Item No. 9.) On February 27, 2020, Licensee filed his concise statement, alleging that the trial court erred by admitting his certified driving history, which he claimed was irrelevant and prejudicial, and by allowing Trooper Sentak to testify. (O.R. Item No. 10.) Licensee disputed that he refused a blood test and asserted that a reasonable person would not refuse a blood test if he knew his license would automatically be suspended. *Id.*

The trial court thereafter issued an opinion in support of its January 21, 2020 order. (O.R. Item No. 11, Trial court op.) With respect to Licensee's argument concerning the admission of his certified driving history, the trial court noted that Licensee did not object to the admission of that document at the hearing. (Trial court op. at 7.) Because Licensee failed to object, the trial court determined that Licensee waived his right to raise the argument on appeal. *Id.* The trial court noted that even if this objection was not waived, Licensee failed to establish how the admission of the certified driving history was prejudicial. *Id.* at 8. The trial court concluded that the certified driving history was not "overly prejudicial" given that Licensee freely admitted that he was drinking and driving on the night in question. *Id.*

With regard to Licensee's argument that Trooper Sentak failed to read the warnings on the DL-26 form, the trial court indicated that the credible testimony of Trooper Sentak established that Licensee received the appropriate warnings. *Id.* at 8-

---

[5] Licensee initially appealed to the Superior Court, which transferred the matter to this Court by order dated March 23, 2020.

6

9. The trial court determined that Trooper Sentak read the four warnings on the DL-26 form to Licensee and again asked Licensee to submit to the blood test when he was transported to the police barracks. *Id.* at 8. The trial court noted that Licensee "even stated in his testimony that he saw the DL-26 form but admittedly did not read it." *Id.*

**Discussion**

On appeal,[6] Licensee first argues that the trial court erred in admitting his certified driving history, which included a notation that Licensee had been previously arrested and convicted of possession of a controlled substance and lost his driver's license for six months as a result. More specifically, Licensee argues that his prior conviction and license suspension had "nothing to do with the alleged violation of the Implied Consent Law." (Weston's Br. at 13.) He also suggests, without elaboration, that "the Certified Driving History played a major part in determining how the criminal court proceeded for a first time DUI defendant." *Id.* We agree with the trial court that this issue has been waived.

At the hearing, DOT's counsel moved to admit three exhibits including the notice of suspension, the DL-26 form, and Licensee's certified driving history. Noting that Licensee was *pro se*, the trial court explained the concept of objecting to the evidence and asked whether Licensee had any objections to DOT's evidence. The trial court asked DOT's counsel to again list the proffered documents and added its own explanation of each one. (N.T. at 2-6.) After the trial court's explanation, Licensee stated he had no objections to the documents. *Id.* at 6. Licensee did not challenge or raise any issue regarding DOT's exhibits before the trial court. Thus, this

---

[6] Our scope of review is limited to determining whether the findings of fact are supported by substantial evidence or whether the trial court committed an error of law or an abuse of discretion in reaching its decision. *Piasecki v. Department of Transportation, Bureau of Driver Licensing*, 6 A.3d 1067, 1070 n.7 (Pa. Cmwlth. 2010).

7

issue is waived. Pa.R.E. 103(a) (providing that if evidence is admitted, a party preserves a matter for appeal by timely objecting and stating the specific ground for the objection); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Moreover, Licensee's argument, even if not waived, is without merit. First, Licensee does not explain how introduction of his certified driving history prejudiced him. DOT had the burden to prove that

> (1) Licensee was arrested for violating Section 3802 of the Vehicle Code by a police officer who had "reasonable grounds to believe" that Licensee was operating or was in actual physical control of the movement of a vehicle while in violation of Section 3802 (i.e., while driving under the influence); (2) Licensee was asked to submit to a chemical test; (3) Licensee refused to do so; and (4) Licensee was specifically warned that a refusal would result in the suspension of his operating privilege[] and would result in enhanced penalties if he was later convicted of violating Section 3802(a)(1).

*Martinovic v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 30, 34 (Pa. Cmwlth. 2005). DOT established each of these elements. With respect to Licensee's suggestion that the trial court was negatively influenced by his prior arrest, there is nothing to indicate that was the case. Failure to submit to chemical testing results in a one-year suspension pursuant to section 1547(b)(1)(i) of the Vehicle Code, which is the penalty the trial court imposed. We therefore reject Licensee's bald assertion that this evidence was irrelevant and prejudicial.

In his second issue, Licensee contends that, contrary to the trial court's conclusion, he did not refuse the blood test. He argues the trial court should have applied an objective reasonable person standard when deciding whether Licensee refused chemical testing under section 1547(b)(1)(i) of the Vehicle Code. (Licensee's

Br. at 4, 14.) ("The court must decide in all probability will an educated reasonable person refuse a blood test if he … knew of the consequence of an automatic suspension of his driver's license for one year and all the penalties that come with it. What would a reasonable person do?"). He contends that if Trooper Sentak had read the warnings, and informed him of the possibility of an automatic one-year license suspension, then the trial court was obligated to conclude that "as an educated reasonable person, [he] would have signed and gave blood that very night" because no reasonable person would have refused testing knowing that his license would be suspended for a year.[7] *Id.* at 14. We reject Licensee's rationale. The implied consent standard does not contemplate reasonableness because anything less than unequivocal assent constitutes a refusal under the law. *Department of Transportation, Bureau of Driver Licensing v. Renwick*, 669 A.2d 934, 939 (Pa. 1996); *McKenna v. Department of Transportation, Bureau of Driver Licensing*, 72 A.3d 294, 298 (Pa. Cmwlth. 2013); *Lanthier v. Department of Transportation, Bureau of Driver Licensing*, 22 A.3d 346, 348 (Pa. Cmwlth. 2011). Applying a reasonable person standard in this situation would be antithetical to the very purpose of the Implied Consent Law, which requires cooperation with blood-alcohol testing as a condition of the privilege of driving on state roads. *See Missouri v.*

---

[7] Licensee also argues for the first time in his Statement of Questions Involved that he complied with the Implied Consent Law because he submitted to a breathalyzer test. (Licensee's Br. at 11.) He argues that the Implied Consent Law requires that the driver *either* submit to a blood *or* preliminary breath test, and since he complied with the preliminary breath test, he did not refuse. First, this issue is waived for failure to raise it before the trial court, Pa.R.A.P. 302(a), and because the argument is not developed with caselaw or argument. *Stein v. Department of Transportation, Bureau of Licensing*, 857 A.2d 719 (Pa. Cmwlth. 2004), *as amended* (Sept. 10, 2004). Even if the issue was not waived, it is without merit. It is well settled that agreeing to a preliminary breath test does not satisfy the requirement to submit to chemical testing for which a refusal does result in a suspension. *Gregro v. Department of Transportation, Bureau of Driver Licensing*, 987 A.2d 1264, 1268 (Pa. Cmwlth. 2010). *See also Sitoski v. Department of Transportation, Bureau of Driver Licensing*, 11 A.3d 12, 20 (Pa. Cmwlth. 2010) (the completion of a preliminary breath test does not satisfy the chemical testing requirements of Section 1547(a)(1) of the Vehicle Code).

9

*McNeely*, 569 U.S. 141, 161 (2013) ("All 50 states have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to [blood alcohol concentration] testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense.").

Licensee also challenges the trial court's factual determination that Trooper Sentak read the DL-26 form warnings to Licensee, and that Licensee knowingly refused to submit to a blood test. Licensee asserts that he testified "under oath" that Trooper Sentak did not read him the warnings on the DL-26 form or inform him that his license could be suspended for a year if he refused the test. (Licensee's Br. at 7.) In making this challenge, Licensee is directly attacking the trial court's credibility determinations, arguing that the trial court erred by believing Trooper Sentak's testimony instead of his.

"Questions of credibility and conflicts in the evidence presented are for the trial court to resolve, not our appellate courts." *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. 1989). In *O'Connell*, our Supreme Court explained:

> As long as sufficient evidence exists in the record which is adequate to support the finding found by the trial court, as factfinder, we are precluded from overturning that finding and must affirm, thereby paying the proper deference due to the factfinder who heard the witnesses testify and was in the sole position to observe the demeanor of the witnesses and assess their credibility. This rule of law is well established in our jurisprudence and is rooted in concepts of fairness, common sense[,] and judicial economy.

*Id.* at 875.

Here, the trial court rejected Licensee's testimony as not credible and instead credited Trooper Sentak's testimony and found that Trooper Sentak read

Licensee the DL-26 form warnings and gave him a proper explanation. Licensee's argument in this regard appears to be an attempt to persuade this Court to reweigh the testimony and documentary evidence, which is something we cannot do. *Sitoski v. Department of Transportation, Bureau of Driver Licensing*, 11 A.3d 12, 17 (Pa. Cmwlth. 2010) ("[The l]icensee essentially asks this Court to reweigh the evidence, find his evidence credible, and conclude that [DOT] failed to establish its burden of proof. However, this Court is not vested with the authority to do so."). Therefore, the evidence presented by DOT supports the trial court's determination that Licensee was properly warned of the consequences concerning a refusal to submit to a blood alcohol test.

## Conclusion

Because DOT met its burden, Licensee was responsible for proving that he was not capable of making a knowing and conscious refusal to take the test. *Broadbelt v. Department of Transportation, Bureau of Driver Licensing*, 903 A.2d 636, 640 (Pa. Cmwlth. 2006). Licensee failed to present any such evidence. Accordingly, we affirm the trial court's order denying Licensee's statutory appeal from the one-year suspension of his operating privilege under section 1547(b)(1)(i) of the Vehicle Code.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maurice Weston,              :
           Appellant     :
                    :   No.  698 C.D. 2020
                    :
        v.             :
                    :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing      :

## ***ORDER***

AND NOW, this 5th day of May, 2021, the order of the Court of Common Pleas of Bucks County, dated January 21, 2020, is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge