# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alesha K. Magill,                                                    :
                                    Appellant    :
                                                                     :
                        v.                                          :        No.  988 C.D. 2020
                                                                     :        Submitted:  April 16, 2021
Commonwealth of Pennsylvania,                        :
Department of Transportation,                          :
Bureau of Driver Licensing                              :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                     HONORABLE PATRICIA A. McCULLOUGH, Judge
                     HONORABLE CHRISTINE FIZZANO CANNON, Judge


<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                              FILED: August 9, 2021


Alesha K. Magill (Licensee) appeals from the September 22, 2020 Order of the Court of Common Pleas of Cumberland County (trial court), which dismissed Licensee's appeal and reinstated the one-year suspension of Licensee's operating privilege imposed by the Department of Transportation (Department), Bureau of Driver Licensing (Bureau), under Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i), commonly referred to as the Implied Consent Law.[1]  Per

---

[1]Section 1547(b)(1)(i) states in relevant part:

(1) If any person placed under arrest for a violation of Section 3802 [of the Vehicle Code, 75 Pa.C.S. § 3802 (relating to driving under the influence of alcohol or controlled substance)] is requested to submit to chemical testing and refuses to do

**(Footnote continued on next page…)**

Section 3802 of the Vehicle Code, 75 Pa.C.S. § 3802, the Bureau suspended Licensee's operating privilege for refusal to submit to a chemical test in connection with her arrest for driving under the influence. Upon review, we affirm the trial court's Order.

The facts as found by the trial court in its opinion issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), (Rule 1925(a) Opinion), are as follows. "At 4:25 a.m. on December 27, 2019, Officer Ethan Paulus of the Mechanicsburg Police Department was dispatched to a vehicular crash on East Main Street in Mechanicsburg involving a moving vehicle and a parked vehicle." (Rule 1925(a) Opinion (Op.) at 1.) When Officer Paulus arrived on scene, Licensee acknowledged operating the moving vehicle that struck the parked vehicle. At the time, Licensee was leaning against the rear bumper of one of the vehicles.

Officer Paulus instructed Licensee and the owner of the parked vehicle, who was also at the scene, to move to the sidewalk. When told to do so, Licensee "simply stared" at Officer Paulus in response. (*Id.* at 2.) When asked again, Licensee obliged, and Officer Paulus observed Licensee having trouble maintaining balance before nearly tripping over the curb. Officer Paulus observed the odor of alcohol on Licensee's breath, Licensee's bloodshot eyes, and how Licensee was swaying as Licensee stood on the sidewalk. When asked if and where Licensee was drinking, Licensee responded with "down the road" and, subsequently, "at a friend's house."

---

so, the testing shall not be conducted but upon notice by the police officer, the [D]epartment shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa.C.S. § 1547(b)(1)(i).

(*Id.*)  Officer Paulus then conducted field sobriety tests, which Licensee performed poorly.  In addition to losing balance several times, Licensee failed to follow directions and exhibited impatience with Officer Paulus during the tests.

As a result of Licensee's poor performance, Officer Paulus concluded that Licensee was too intoxicated to drive and asked Licensee several times to submit to a preliminary breath test, which Licensee refused.  Officer Paulus placed Licensee in custody and asked Licensee to submit to a chemical blood test, which Licensee also refused.  Officer Paulus read the DL-26B[2] form warning to Licensee verbatim, and Licensee again refused.  Officer Paulus then transported Licensee to the Cumberland County Prison for booking, where Officer Paulus asked Licensee to sign the DL-26B form.  Licensee requested to look at the DL-26B form, and Officer Paulus handed it to Licensee.  Licensee looked at it and asked what it was, and Officer Paulus explained that it was the same form Officer Paulus had read to

---

[2] The DL-26B form that was read to and signed by Licensee provided, in relevant part:

> It is my duty as a police officer to inform you of the following:
>
> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of blood.
>
> 3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months.  If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months . . . .
>
> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing.  If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

(Reproduced Record at 34a.)

3

Licensee, explained again what it was, and read it again. Officer Paulus then requested the DL-26B form back and stated it would not be read again because Officer Paulus concluded that Licensee already refused.

On January 15, 2020, the Department mailed Licensee a notice, advising Licensee of the suspension of Licensee's operating privilege following Licensee's refusal to submit to chemical testing. Licensee then filed an appeal to the trial court, which held a de novo hearing. At the hearing, Licensee testified that Licensee worked that evening tending bar and was driving home but could not remember leaving work, driving, or striking a parked vehicle. Licensee vaguely recalled being placed in the police vehicle but did not remember being asked to submit to a chemical test. When asked about submitting to a blood test, Licensee stated "[I] kind of remember at the booking or police station . . . [being] handed that paper . . . and not really being able to read it[.]" (Rule 1925(a) Op. at 3.) Licensee could not read the DL-26B form due to not having glasses and because Licensee was "out of it." (*Id.*) Licensee also testified to being on medication for bronchitis, which may have still been in Licensee's system. Licensee also speculated that someone "put something" in Licensee's "shifties," which Licensee explained were two free drinks Licensee was permitted to have at the end of the shift and which Licensee drank prior to leaving work. (*Id.* at 3-4.) Licensee did not offer any medical evidence of either possibility.[3]

---

[3] When a licensee alleges a medical condition thereby rendering the licensee incapable of performing tests:

> [T]he licensee must present competent, unequivocal expert evidence as to the severity of his or her emotional state following the drunk driving arrest and how that severe emotional state precluded licensee from recalling something as

**(Footnote continued on next page…)**

4

On appeal,[4] Licensee argues the trial court erred by: (1) finding that Licensee refused to submit to chemical testing; (2) finding that Licensee was warned by the officer that Licensee's license will be suspended if Licensee refused to submit to chemical testing; (3) finding that expert testimony was required to assess whether any perceived refusal, by Licensee, was knowing and conscious; (4) failing to find that any perceived refusal was not knowing and conscious; and (5) failing to find that Licensee's overall conduct demonstrated a willingness to assent to chemical testing.

Licensee argues that, although an officer is not required to give multiple opportunities to consent to chemical testing, if the officer "does provide a 'second chance[,]'[] [Licensee] should be afforded an opportunity to comply." (Licensee's Brief (Br.) at 6.) Licensee contends that Officer Paulus read the DL-26B form to Licensee again upon arriving at the booking station and nothing in the record shows that Licensee refused after being read the DL-26B form a second time. (*Id.* at 8.) Licensee concedes that the statute does not "require an officer to give an individual multi[ple] opportunities to comply with the chemical test," but states there is nothing in the statute that prohibits an officer from doing so. (*Id.* at 8-9 (citing 75 Pa.C.S. § 1547(b)).) Therefore, Licensee argues that "if an officer reads the DL-26[B] a second time, the officer has reopened the door and needs to give a 'meaningful opportunity' or a 'reasonable and sufficient opportunity' to comply." (*Id.* at 9 (citing

---

significant as a medical condition which renders him or her incapable of performing the breathalyzer test.

*Hatalski v. Dep't of Transp., Bureau of Driver Licensing*, 666 A.2d 386, 390 (Pa. Cmwlth. 1995).

[4] This Court's scope of review is "limited to determining whether [the trial court] committed an error of law, whether [the trial court] abused its discretion, or whether the findings of fact are supported by substantial evidence." *Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030, 1035 n.6 (Pa. Cmwlth. 2018).

5

*Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 749 (Pa. 2015)).)

The Department responds that Officer Paulus read the Implied Consent warnings to Licensee while Licensee was seated in Officer Paulus's patrol car, and in response to Officer Paulus's request that Licensee consent to a blood test, Licensee told Officer Paulus no. (Department's Br. at 10.) The Department contends that "[a]nything substantially less than an unqualified, unequivocal assent by [a] licensee to the officer's request is a refusal of chemical testing." (*Id.* at 9 (citing *Dep't of Transp. v. Renwick*, 669 A.2d 934, 939 (Pa. 1996)).) Additionally, the Department cites the trial court's finding that Licensee refused Officer Paulus's request for a chemical test. (*Id.* at 11.) Furthermore, "neither Officer Paulus nor [Licensee] testified that the officer offered [Licensee] a second opportunity at the booking center to submit to a chemical test or that [Licensee] ever consented to submit to chemical testing[,]" (*id.* at 13), and, therefore, Licensee's argument is without merit.

Having reviewed the record, the arguments of the parties, and the relevant law, we conclude that the appellate issues have been ably resolved in the thorough and well-reasoned opinion of Judge Christylee L. Peck. Therefore, this Court affirms on the basis of the trial court's Opinion in *Magill v. Department of Transportation, Bureau of Driver Licensing* (C.C.P. Cumberland, No. 2020-01467, filed December 2, 2020).

 

**RENÉE COHN JUBELIRER,** Judge

6

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alesha K. Magill,        :
      Appellant   :
            :
    v.       :  No.  988 C.D. 2020
            :
Commonwealth of Pennsylvania,  :
Department of Transportation,   :
Bureau of Driver Licensing    :

## **O R D E R**

 **AND NOW**, August 9, 2021, the Order of the Court of Common Pleas of Cumberland County dated September 22, 2020 is **AFFIRMED** on the basis of the opinion in *Magill v. Department of Transportation, Bureau of Driver Licensing* (C.C.P. Cumberland, No. 2020-01467, filed December 2, 2020).


          _____
          **RENÉE COHN JUBELIRER,** Judge

ALESHA K. MAGILL,
Petitioner

v.

COMMONWEALTH OF
PENNSYLVANIA,
DEPARTMENT OF
TRANSPORTATION,
BUREAU OF DRIVER
LICENSING,
Respondent

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
:
:
:
:
:
:
:
:
:
:
:
:
: 2020-01467 CIVIL TERM



2020-01467-0010 F#1400205 Fee:$0.00
OPINION
Main (Public)
    Rcpt: Z310419   12/2/2020 2:31:13 PM
Dale E. Sabadish, County Prothonotary

OPINION PURSUANT TO PA. R.A.P. 1925

Peck, J., December _2nd_, 2020 –

A. Facts and Procedural History

On January 15, 2020, PennDOT mailed Appellant notice of suspension of her driving privilege following her refusal to submit to chemical testing at the point of her arrest for driving under the influence.[1] Appellant filed an appeal with this Court on February 12, 2020.[2] We held a hearing thereon on September 21, 2020 and subsequently entered an Order dated September 22, 2020 dismissing her appeal and reinstating the license suspension.[3] Appellant now timely appeals our September 22, 2020 Order.[4] We made the following findings at the September 21, 2020 hearing, and offer same in support of our judgment.

At 4:25 a.m. on December 27, 2019, Officer Ethan Paulus of the Mechanicsburg Police Department was dispatched to a vehicular crash on East Main Street in Mechanicsburg, Cumberland County involving a moving vehicle and a parked vehicle.[5] Officer Paulus had been an officer with the Mechanicsburg Police Department for five

---

[1] PennDOT's Exhibit C-1, Sub-Exhibit No. 1; see In re: License Suspension Appeal, Transcript of Proceedings, September 21, 2020, at 27 (Peck, J.) (hereinafter "N.T. ___").
[2] Appeal of Driver's License/Auto Registration Suspension, filed February 12, 2020.
[3] Order, September 22, 2020 (Peck, J.).
[4] Notice of Appeal, filed October 5, 2020.
[5] N.T. 5-6. Officer Paulus corrected himself as to the time of dispatch at page 6 of the transcript. Id. at 6.

years at the time of the hearing and investigated 70 to 100 DUIs.[6] When he arrived on the scene between 4 to 10 minutes after dispatch, he observed the striking vehicle in the middle of the street about 250 feet away from the struck, parked vehicle.[7] Appellant was leaning up against the rear bumper of the striking vehicle and identified herself as the operator of that vehicle.[8] Another person was present and determined to be the owner of the parked vehicle.[9]

Officer Paulus instructed both individuals to move to the sidewalk to avoid being struck by traffic.[10] Appellant "simply stared" at Officer Paulus in response.[11] When he asked again, Appellant obliged and Officer Paulus observed her having trouble maintaining her balance before nearly tripping over the curb.[12] Officer Paulus observed alcohol on Appellant's breath and bloodshot eyes and Appellant was swaying as she stood on the sidewalk.[13] He asked Appellant if and where she had been drinking, to which Appellant responded "down the road" and, subsequently, "at a friend's house."[14] Officer Paulus proceeded to conduct field sobriety tests, during which she repeatedly rolled her eyes and head indicating to Officer Paulus she was annoyed with how long he was taking to complete same.[15] For the sake of brevity, we find it sufficient to summarize that Appellant performed poorly, lost her balance several times, failed to follow directions, and at times exhibited impatience at Officer Paulus during the tests.[16]

Officer Paulus concluded Appellant was too intoxicated to safely drive her vehicle and asked her a few times to submit to a preliminary breath test, which she refused.[17] He placed Appellant in custody in the back of his police vehicle and asked Appellant if she

---

[6] Id. at 4-5.
[7] Id. at 5-6. Officer Paulus noted the oddity of how distant Appellant's vehicle was from the parked vehicle she struck, as if she were trying to drive away but the vehicle was disabled. Id. at 8.
[8] Id. at 6.
[9] Id. at 7.
[10] Id.
[11] Id.
[12] Id.
[13] Id. at 7-9.
[14] Id. at 8.
[15] Id. at 9.
[16] Id. at 9-11.
[17] Id. at 11.

2

would submit to a chemical blood test, which she refused.[18] Officer Paulus read the DL-26B form warnings to her verbatim and she again refused.[19] Officer Paulus described her refusal after being read the form: "She told me no, she refused. I mean, she -- it wasn't much of a conversation. She just didn't want to do it."[20] He transported Appellant to Cumberland County Prison for booking, where he asked her if she would sign the refusal form.[21] Appellant requested to look at it and Officer Paulus handed it to her.[22] Appellant looked at it and asked what it was, and Officer Paulus explained it was the "same thing" he had read to her, explained again what it was, and read it again.[23] Officer Paulus requested it back, telling her he "wasn't reading it again."[24] Officer Paulus felt she had already refused in the back of the vehicle.[25]

Appellant testified that she could not remember much from the incident.[26] She said she worked that evening tending bar and was on her way home, but she said she could not remember leaving work, driving, or striking a parked vehicle.[27] She noted that she did not tell Officer Paulus she had been working because "they [were] trying to shut down [her] job and [she] didn't want police officers going there."[28] She said she vaguely recalled being placed in the police vehicle but did not remember being asked to submit to a chemical blood test.[29] She did "kind of remember at the booking or police station . . . [being] handed that paper . . . and not really being able to read it" because she was not wearing reading glasses and because she was "out of it."[30] Appellant said she had been on medication for bronchitis which may have still been in her system and speculated that perhaps someone "put something" in her "shifties," which she explained are the two free

---

[18] Id. at 11-12.
[19] Id.; see PennDOT's Exhibit C-1, Sub-Exhibit No. 2.
[20] N.T. 12.
[21] Id.
[22] Id. at 19.
[23] Id. at 19-20.
[24] Id.
[25] Id. at 20.
[26] Id. at 21.
[27] Id. at 22, 24.
[28] Id. at 21.
[29] Id. at 22.
[30] Id.

3

drinks she is permitted to have at the end of her shift and which she did drink prior to leaving work.[31] Appellant did not offer any medical evidence of either possibility.[32]

### B. Discussion

Appellant raises the following issues in her Concise Statement of Errors, which we address in turn:

1. Court erred in finding that licensee refused to submit to chemical testing.
2. Court erred in finding that licensee was warned by the officer that her license will be suspended if she refused to submit to chemical testing.
3. Court erred in finding that expert testimony was required to assess whether any perceived refusal, by licensee, was knowing and conscious.
4. Court erred in failing to find that any perceived refusal was not knowing and conscious.
5. Court erred in failing to find that licensee's overall conduct demonstrated a willingness to assent to chemical testing.[33]

We note the following governing legal principles:

> To sustain a license suspension under the Implied Consent Law, DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

Factor v. Dep't of Transp., Bureau of Driver Licensing, 199 A.3d 492, 496 (Pa. Cmwlth. 2018) (quoting Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013)). The standard of review for an appellate court in a license suspension appeal "is to determine if the factual findings of the trial court are supported by competent evidence, and whether the trial court committed an error of law or an abuse of discretion," though credibility determinations "are for the trial court."

---

[31] Id. at 23.
[32] Id. at 23-24.
[33] Concise Statement of Errors, filed October 28, 2020.

4

<u>Commonwealth, Dep't of Transp., Bureau of Driver Licensing v. Scott</u>, 684 A.2d 539, 542 (Pa. 1996).

### 1. *Complained Error No. 1: Refusal*

We discern no error in our finding that Appellant refused chemical testing. Officer Paulus credibly testified that he asked Appellant to consent to chemical testing, which she refused, then read the DL-26B form warnings verbatim to Appellant and she again refused.[34] Officer Paulus was resolute in his memory of her refusal: "She told me no, she refused. I mean, she -- it wasn't much of a conversation. She just didn't want to do it."[35] We found credible that Appellant explicitly said no. Further, "anything less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal to consent thereto," whether or not a licensee explicitly refuses. <u>Factor</u>, 199 A.3d at 497. We did not find that Appellant's testimony regarding her mental state at the time affected whether she was given meaningful opportunity to assent. <u>See, e.g.</u>, <u>Broadbelt v. Dep't of Transp., Bureau of Driver Licensing</u>, 903 A.2d 636, 641 (Pa. Cmwlth. 2006). As discussed *infra*, we did not find same credible and assigned little weight to same given the absence of medical testimony, or any evidence for that matter that corroborated Appellant's supposition that someone must have put something in her drink.

### 2. *Complained Error No. 2: Warning*

We similarly discern no error in our finding that Officer Paulus warned Appellant that her license would be suspended if she refused to submit to chemical testing. Officer Paulus credibly testified that he placed Appellant in the back of his police vehicle, asked Appellant to submit to chemical testing, read the DL-26B form warnings verbatim, and asked Appellant to submit to chemical testing again.[36] Appellant does not raise in her Concise Statement that the warnings in the DL-26B form were improper, nor do we so find, and thus his verbatim reading was sufficient.[37] <u>See, e.g.</u>, <u>Coriano v. Dep't of Transp., Bureau of Driver Licensing</u>, 2019 WL 2619936, at *2 (Pa. Cmwlth. June 27,

---

[34] N.T. 11-12.
[35] <u>Id.</u> at 12.
[36] <u>Id.</u> at 11; <u>see</u> PennDOT's Exhibit C-1, Sub-Exhibit No. 2.
[37] <u>See</u> PennDOT's Exhibit C-1, Sub-Exhibit No. 2.

2019) (noting, "Pennsylvania's courts have already determined that the DL-26B warnings represent adequate warnings of the current consequences of refusal to submit to chemical testing" when reviewing identical warnings); see also Park v. Dep't of Transp., Bureau of Driver Licensing, 178 A.3d 274, 281 (Pa. Cmwlth. 2018) ("Once a police officer provides the implied consent warnings to a motorist, the officer has done all that is legally required to ensure the motorist is fully advised of the consequences of her failure to submit to chemical testing."). Paragraph 3 in the DL-26B form that Officer Paulus read and which bears Appellant's name and information and the signature of Officer Paulus, provides, in relevant part:

> If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months.[38]

We therefore found that Officer Paulus warned Appellant her driving privilege would be suspended if she refused to submit to chemical testing.

*3. Complained Errors Nos. 3, 4: Knowing and Conscious Refusal; Medical Evidence*

Appellant's next two errors complained of on appeal are that we erred in finding that expert testimony was required to assess whether a refusal is knowing and conscious, and that we erred in failing to find that her refusal was knowing and conscious. We address these complained errors together. Appellant testified that she could not remember being asked to assent to chemical testing and otherwise remembered very little about the accident and her arrest.[39] On cross-examination, Appellant offered a possible explanation as to her apparent disorientation by saying that she had been on medication for bronchitis which may have still been in her system, and she could otherwise only surmise that someone may have "put something" in the two drinks she consumed prior to leaving work.[40] She acknowledged she did not have any medical evidence to support same.[41] In closing argument, counsel for PennDOT noted that Appellant testified about a medical

---

[38] Id.
[39] N.T. 22-23.
[40] Id. at 23.
[41] Id.

6

condition but offered no medical evidence, and argued that given the totality of circumstances, her refusal was knowing and conscious.[42] We agreed, citing the lack of medical evidence with respect to an apparent blackout to which Appellant testified.[43]

We discern no error on this point. Having found that Officer Paulus had reasonable grounds to believe Appellant was driving under the influence, that Appellant was asked to submit to a chemical test and refused, and that Appellant was warned that refusal would result in license suspension, it was Appellant's burden to establish she was incapable of making a knowing and conscious refusal or that she was physically unable to take the test. Factor v. Dep't of Transp., Bureau of Driver Licensing, 199 A.3d 492, 496 (Pa. Cmwlth. 2018). A licensee's testimony alone is generally insufficient to meet that burden. See Kollar v. Dep't of Transp., Bureau of Driver Licensing, 7 A.3d 336, 340 (Pa. Cmwlth. 2010) ("A driver's self-serving testimony that she was incapable of providing a knowing and conscious refusal of chemical testing is insufficient to meet the licensee's burden of proof. . . . Medical testimony is generally required in order to establish a licensee was unable to provide a knowing and conscious refusal to submit to chemical testing."). This is particularly salient where a licensee concedes that she consumed alcohol prior to refusing chemical testing. See Togba v. Dep't of Transp., Bureau of Driver Licensing, 2020 WL 5033425 (Pa. Cmwlth. Aug. 26, 2020). In such a case, a licensee must prove with medical evidence that "alcohol ingestion played no part in rendering [her] incapable of making a knowing and conscious refusal." Dailey v. Dep't of Transp., Bureau of Driver Licensing, 722 A.2d 772, 774 (Pa. Cmwlth. 1999). Indeed, "if a motorist's inability to make a knowing and conscious refusal of testing is caused, in whole or *in part*, by the consumption of alcohol, the motorist's affirmative defense fails." DiGiovanni v. Dep't of Transp., Bureau of Driver Licensing, 717 A.2d 1125, 1127 (Pa. Cmwlth. 1998) (quoting Gombar v. Dep't of Transp., Bureau of Driver Licensing, 678 A.2d 843, 847 (Pa. Cmwlth. 1996)). We note that regardless of the lack of medical evidence, we did not find credible Appellant's testimony that she remembered little to

---

[42] Id. at 27.
[43] Id. at 27-28.

7

nothing of her interaction with Officer Paulus, nor were we persuaded that she may have ingested drugs without her knowledge. We therefore found Appellant failed in meeting her burden.

### 4. Complained Error No .5: Willingness to Assent

Appellant's final error complained of on appeal is that we erred in failing to find that her overall conduct demonstrated a willingness to assent to chemical testing. We addressed our reasons for finding that Appellant refused chemical testing *supra*. In summary, we found Officer Paulus credibly testified that Appellant flatly refused. We further found, as also discussed herein, that we did not credit Appellant's testimony about a possible medical condition or mental state that may have affected her ability to assent. Finally, to the extent Appellant is referencing the interaction she had with Officer Paulus at the booking center when Officer Paulus asked Appellant to sign the refusal form, we did not find that any of Appellant's words or conduct negated her refusal. Officer Paulus testified that at the booking center he asked Appellant to sign the refusal form, she requested to look at it, Officer Paulus handed it to her, Appellant looked at it and asked what it was, and Officer Paulus explained it was the "same thing" he read to her, explained what it was, read it to her again, and retrieved it back on the basis that he felt she had already refused prior to this point.[44]

We agree. Any "willingness" Appellant may have attempted to display after transport to the booking center was long past the point of her refusal and did not vitiate same. See Cunningham v. Dep't of Transp., 525 A.2d 9, 10 (Pa. Cmwlth. 1987); King v. Dep't of Transp., Bureau of Driver Licensing, 828 A.2d 1, 4-5 (Pa. Cmwlth. 2002). This finding is bolstered by the fact that neither Officer Paulus nor Appellant testified that Appellant *asked* to take the test or expressed any overt willingness to take the test upon arrival at the booking center, leaving Appellant's mere interest in reading the refusal form after refusal the sole evidence of Appellant's possible willingness to assent. Officer Paulus was not required to coax Appellant into revoking her refusal. It is well settled that "[o]fficers are not required to 'spend effort either cajoling the licensee or spend time

---

[44] Id. at 12-13, 19-20.

8

waiting to see if the licensee will ultimately change [her] mind.'" Walkden v. Dep't of Transp., Bureau of Driver Licensing, 103 A.3d 432, 440 (Pa. Cmwlth. 2014) (quoting Broadbelt v. Dep't of Transp., Bureau of Driver Licensing, 903 A.2d 636, 641 n.7 (Pa. Cmwlth. 2006)).

C. Conclusion

We discern no error in our judgment and respectfully request the Commonwealth Court affirm.

BY THE COURT,

_____
Christylee L. Peck,    J.

William C. Felker, Esq.
88 N. Old Stonehouse Road
Carlisle, PA 17015

Shawn J. Jayman, Esq.
Riverfront Office Center, 3rd Floor
1101 South Front Street
Harrisburg, PA 17104

Copies mailed
12·2·20
dw

9